[Cite as *Chillicothe Gazette v. Chillicothe City Schools*, 2018-Ohio-5445.]

| | |
|---|---|
| CHILLICOTHE GAZETTE | Case No. 2018-00950PQ |
| Requester | Special Master Jeffery W. Clark |
| v. | REPORT AND RECOMMENDATION |
| CHILLICOTHE CITY SCHOOLS | |
| Respondent | |

{¶1} Ohio's Public Records Act, R.C. 149.43, provides a remedy for production of records under R.C. 2743.75 if the court of claims determines that a public office has denied access to public records in violation of R.C. 149.43(B). The policy underlying the Act is that "open government serves the public interest and our democratic system." *State ex rel. Dann v. Taft,* 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. "[O]ne of the salutary purposes of the Public Records Law is to ensure accountability of government to those being governed." *State ex rel. Strothers v. Wertheim*, 80 Ohio St.3d 155, 158, 684 N.E.2d 1239 (1997). Therefore, "[w]e construe the Public Records Act liberally in favor of broad access and resolve any doubt in favor of disclosure of public records." *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, ¶ 6.

{¶2} On the morning of April 30, 2018, reporter Jona Ison of the Chillicothe Gazette made a public records requests to respondent Chillicothe City Schools (CS):

> I have heard rumor Jon Saxton has/is resigning today. Has he submitted a resignation letter? If so, please provide me a copy.
>
> Also, if the Title IX report by the attorneys has been completed and provided to the district, please provide me a copy. **[Request No. 1]**

(Am. Compl., Exh. E, p. 2-3.) Chillicothe CS promptly responded that

> There are no documents which would satisfy your first request. The document which is the subject of your second request is protected by attorney-client privilege.

(*Id.*) On the afternoon of April 30, 2018, Ison added the following requests:

> The Gazette would like to receive copies of the following:
> - Contract or other documentation outlining the cost and scope of work to be done by Freund, Freeze & Arnold and/or attorney Sandra R. McIntosh. **[Request No. 2]**
>
> - Meeting minutes showing board approval to hire Freund, Freeze & Arnold and/or attorney Sandra R. McIntosh. **[Request No. 3]**
>
> - All bills from Freund, Freeze & Arnold and/or attorney Sandra R. McIntosh for 2017 and 2018. **[Request No. 4]**

(*Id.*, Exh. A, p. 2-3, with attachment Exh. B.) Chillicothe CS responded on May 4, 2018 that:

> Sandra was appointed as counsel through the District's liability insurer, and was not engaged by the Board. Therefore, I can not produce meeting minutes or bills from her for 2017 and 2018 because we do not have any.

(*Id.*, Exh. A, p. 2.) On May 7, 2018, Ison sent an email containing a final request:

> Please send me a copy of the insurance policy you referred to below as well as all correspondence with the insurance carrier related to Freund, Freeze & Arnold and/or attorney Sandra R. McIntosh being retained and throughout the retainer. **[Request No. 5]**

(*Id.*, Exh. A, p. 1.) On May 21, 2018, Chillicothe CS produced a copy of the requested insurance policy. (*Id.*; Reply, Exh. C.) On May 23, 2018, Chillicothe CS further responded:

> I never got to speak with you about the questions you had about the date, scope of work, and who initiated it, etc.

> Here is what I can tell you. The date of the correspondence was 10/13/2017, she is no longer actively engaged, and she was appointed insurance council [sic].

> This may not help you much but this is all the information I can provide you with.

(Am. Compl., Exh. C.) On May 29, 2018, counsel for the Gazette reiterated Ison's request for the "Title IX investigation report" and added a request for "an engagement

letter in which the School District laid out the terms of the engagement. We believe this is dated 10/13/17." **[Request No. 6]**. (*Id.*, Exh. D, p. 1.) On May 30, 2018, counsel for Chillicothe CS responded that

> Ms. Ison requested records related to Sandy McIntosh and her firm, Freund, Freeze and Arnold. Ms. McIntosh was appointed as counsel by the District's liability insurance carrier. Ms. Lawwell properly indicated that any responsive documents are privileged. Ms. McIntosh has not prepared any "independent Title IX investigation report." That is/was not her role.

(*Id.*, Exh. E, p. 1.)

{¶3} On June 13, 2018, the Gazette filed a complaint under R.C. 2743.75 alleging denial of access to public records by Chillicothe CS in violation of R.C. 149.43(B). On July 10, 2018, the Gazette filed an amended complaint. Following unsuccessful mediation, Chillicothe CS filed a motion to dismiss (Response) on September 14, 2018. On September 25, 2018, Chillicothe CS provided an additional record to the Gazette. (Reply at 1, Reply Exh. A.) Chillicothe CS has filed a number of withheld items under seal, and on November 9, 2018 filed a supplemental response.

**Motion to Dismiss**

{¶4} In construing a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). Then, before the court may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).

{¶5} Chillicothe CS moves to dismiss the complaint on the grounds that 1) requester has not identified the records sought with sufficient clarity, 2) any legal services bills paid by the insurance carrier are not "records" of respondent, 3) meeting minutes as described in the request do not exist, 4) the requested "independent Title IX investigation report" does not exist, and 5) responsive communications between

Attorney McIntosh and the Board are protected from disclosure by attorney-client privilege. Although Chillicothe CS did not deny any of the requests on the grounds of ambiguity or overbreadth prior to the filing of this action, it now asserts that "[t]he inconsistency of the official public records request, original Complaint, and Amended Complaint demonstrate the Requester has failed to request the records sought "with reasonable clarity." However, it is the public records *request* that must "reasonably identify what public records are being requested," not the complaint. *See* R.C. 149.43(B)(2). While not a model of clarity, the complaint sufficiently pleads denial of the requests attached to the complaint through the content of the correspondence, the name of the school official responsible for the denial, and the date of final denial.

{¶6} While part of Request No. 2, and all of Request No. 3, are ambiguous and overly broad, Request No. 2 also includes a proper request, and Request No. 3 is properly denied on multiple grounds. Therefore, these requests will be addressed below on the merits. The other defenses presented by the City; non-existence, non-records, common-law attorney-client privilege, and mootness, cannot be determined based solely on the complaint and attachments thereto. I therefore recommend that the motion to dismiss be DENIED, and the matters determined on the merits.

### Burdens of Proof

{¶7} In an action to enforce Ohio's Public Records Act (PRA), the burden is on the requester to prove an alleged violation. In mandamus enforcement actions,

> [a]lthough the PRA is accorded liberal construction in favor of access to public records, "the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence."

*State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 428, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 15. Entitlement to relief under R.C. 2743.75 must likewise be established by clear and convincing evidence. *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153 ¶ 27-30 (5th Dist.).

{¶8} If a public office asserts an exception to the Public Records Act, the burden of proving the exception rests on the public office. "Exceptions to disclosure under the

Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus. Any doubt should be resolved in favor of disclosure. *State ex rel. James v. Ohio State Univ.*, 70 Ohio St.3d 168, 169, 637 N.E.2d 911 (1994).

{¶9} However, the defense that an item is not a record does not assert an exception, and the burden of proof remains with the requester. When this assertion is made,

> *a requester must establish* that they are (1) documents, devices, or items, (2) created or received by or coming under the jurisdiction of CMHA, (3) which serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

(Emphasis added.) *State ex rel. O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St.3d 149, 2012-Ohio-115, 962 N.E.2d 297, ¶ 23. *See State ex rel. Dispatch Printing Co. v. Johnson,* 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 19 (If requester fails to prove any of these three requirements, the items are not subject to disclosure under the Public Records Act).

{¶10} The burden is thus on the requester to show that disputed items meet the definition of a "record." *But see Hurt v. Liberty Twp.* at ¶ 75-78. Similarly, where an office attests that requested records do not exist, the requester has the burden to establish that the records exist by clear and convincing evidence. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 22-26.

**Request No. 1 for "the Title IX report by the attorneys"**

{¶11} Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et seq., prohibits discrimination on the basis of sex in any educational program or activity that receives certain federal funding. On April 4, 2011, the U.S. Department of Education

Office for Civil Rights issued a Dear Colleague letter ("2011 Letter")[1] that, as relevant here, addresses grievance procedures for resolution of complaints alleging actions prohibited by Title IX. "As part of these procedures, schools generally conduct investigations and hearings to determine whether sexual harassment or violence occurred," 2011 Letter at 10. Such an investigation is referred to as a "Title IX investigation."

{¶12} Chillicothe CS commissioned two reports related to a student complaint involving former employee Dr. Jeffrey Fisher, but only one is a Title IX investigation report. The first report, titled Chillicothe High School Title IX Investigation (Dr. Jeffrey R. Fisher), was prepared pursuant to board policy and has been disclosed to the Gazette in redacted form. (Reply, Exh. A; Supplemental Response at 4-5.) The first report addressed whether sexual harassment or violence occurred, and Chillicothe CS does not dispute that the first report is a "Title IX report by the attorneys." Chillicothe CS redacted portions of the first report pursuant to the federal Family Education Rights and Privacy Act (FERPA), 20 U.S.C. §1232g; 34 C.F.R. Part 99; and pursuant to R.C. 3319.321. These exceptions will be reviewed separately below.

{¶13} The purpose of the second report, titled Attorney-Client Report and Recommendations Related to the Chillicothe High School Title IX Sex Harassment Investigation (Jeffrey R. Fisher), was not to establish whether sexual harassment or violence occurred. Instead, it contains the attorney's analysis and recommendations for future risk management and student safety improvements. (*Id.*; Oct. 10, 2018 Mullins Aff. at ¶ 3; Oct. 10, 2018 Philemond Aff. at ¶ 3.). The second report was not a Title IX investigation report, and thus not a record sought by the Gazette's request. A public office is only required to produce records that match the terms of the request. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 25; *Ebersole v. Powell*, Ct. of Cl. No. 2018-00478-PQ, 2018-

---

[1] The 2011 Letter is a "significant guidance document" for Title IX compliance, archived at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf (Accessed November 16, 2018.)

Ohio-4597, ¶ 37. I find that the Gazette has not shown by clear and convincing evidence that Chillicothe CS failed to comply with R.C. 149.43(B) by not providing the second report. As this defense is dispositive, the assertion that attorney-client privilege applies to the contents of the second report need not be determined.

**Family Education Rights and Privacy Act (FERPA)**

{¶14} FERPA, where applicable, constitutes a prohibition on the release of records under the Public Records Act. *State ex rel. ESPN, Inc. v. Ohio State Univ.*, 132 Ohio St.3d 212, 2012-Ohio-2690, 970 N.E.2d 939, ¶ 18-25. As relevant here, FERPA prohibits an educational institution from having

> a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information * * *) of students without the written consent of their parents to any individual, agency, or organization.

20 U.S.C. 1232g(b)(1). The term "education records" means materials which "(i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. 1232g(a)(4). Although the Title IX investigation here was of an employee, rather than a student, the report is an "education record" to the limited extent it contains information identifying individual students. *ESPN* at ¶ 28-30.

{¶15} FERPA permits an educational institution to disclose education records if it has removed all personally identifiable information. *See United States v. Miami Univ.,* 294 F.3d 797, 811, 824 (6th Cir.2002). "Personally identifiable information" includes:

(a) The student's name;

(b) The name of the student's parent or other family members;

(c) The address of the student or student's family;

(d) A personal identifier, such as the student's social security number, student number, or biometric record;

(e) Other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name;

(f) Other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; or

(g) Information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates.

34 CFR 99.3. Based on the above, I find that that Chillicothe CS may redact personally identifiable information of students identified in the Title IX report.

**R.C. 3319.321**

Like FERPA, Ohio's R.C. 3319.321(B) provides:

No person shall release, or permit access to, personally identifiable information other than directory information concerning any student attending a public school, for purposes other than those identified in division (C), (E), (G), or (H) of this section, without the written consent of the parent, guardian, or custodian of each such student who is less than eighteen years of age, or without the written consent of each such student who is eighteen years of age or older.

Unlike FERPA, the statute is not limited to "education records," but broadly prohibits release of any personally identifiable information other than directory information concerning any student attending a public school. "Personally identifiable information" is not defined in the Ohio Revised Code for purposes of Chapter 3319, and the court must therefore refer to the related FERPA definition at 34 C.F.R. § 99.3. I conclude that in this case R.C. 3319.321(B) provides an exception nearly identical to that in FERPA, and requires Chillicothe CS to withhold all "personally identifiable information" of the students identified in the Title IX report.

**Extent of Redaction**

{¶16} FERPA and R.C. 3319.321(B) do not permit redaction of adjacent non-exempt material. *ESPN* held that "[w]ith the personally identifiable information concerning the names of the student-athlete, parents, parents' addresses, and the other person involved redacted, FERPA would not protect the remainder of these records." *ESPN* at ¶ 33-35. The Public Records Act likewise requires that

> [i]f a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt.

R.C. 149.43(B)(1). Surgical redaction that retains disclosure of non-exempt portions of a record furthers this core purpose of the Act: "The Public Records Act serves a laudable purpose by ensuring that government functions are not conducted behind a shroud of secrecy." *ESPN* at ¶ 40. Neither these statutes, nor any other public records exception, permits withholding material from this report on the grounds that it is salacious, embarrassing, or otherwise implicates generalized privacy concerns. *See State ex rel. WBNS TV, Inc. v. Dues*, 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 30-36. On review of the redacted report *in camera*, I find that Chillicothe CS redacted all "personally identifiable information" that falls within categories (a) through (e). However, additional material was redacted that does not fall within categories (a) through (e).

{¶17} Jessica Philemond states that she prepared the redacted copy of the Title IX report "to remove personally identifiable student information in accordance with" FERPA and R.C. 3319.321 while serving as legal counsel to Chillicothe CS. (Philemond Aff. at ¶ 4.) Philemond states that she provided no professional services to Chillicothe CS prior to December 18, 2017. (*Id.* at ¶ 2.) Philemond does not relate any source of knowledge other than her own in determining what material was personally identifiable information. Chillicothe CS did not claim, and provided no evidence, that any redacted material falls under *Personally Identifiable Information* category (f). Nevertheless, some

of the additional redacted information appears likely to allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty.

{¶18} I find on review of the unredacted Title IX report (Exh. 7, filed under seal), and the report as released (Reply, Exh. A; Exh. 6, filed under seal), that Chillicothe CS fails to show that the following material fell under any category of "personally identifiable information." The explanatory column identifies any items that may remain redacted:

| Non-Exempt Material | Explanation, And Material That May Remain Redacted |
| --- | --- |
| Pg. 2, ¶ 2, line 5 | Redacted word indicates only gender |
| Pg. 4, ¶ 4, lines 6 & 7 | Only student names, not action or inaction, may be redacted |
| Pg. 4, ¶ 4, line 10 | No FERPA exception applies to non-identifying statements |
| Pg. 5, ¶ 1, lines 1 & 2 | No FERPA exception applies to non-identifying statements |
| Pg. 5, ¶ 3, line 3 | No FERPA exception applies to description of Fisher's position at the time. |
| Pg. 5, ¶ 3, title and lines 4-6 | Only the student name and class year may be redacted. FERPA exceptions to not apply to actions, inactions, or contents of statements. |
| Pg. 5, ¶ 3, line 7 | Only student name may be redacted. |
| Pg. 5, ¶ 4 | Only student names, not non-identifying statements and actions, may be redacted. |
| Pg. 5, ¶ 5 | Only student names may be redacted. May also redact brand names of gifts, as specific enough that may allow reasonable person in the school community to identify. |
| Pg. 5, ¶ 6 (continuing onto Pg. 6, lines 1-2) | Only names and class years may be redacted. Action or inaction may not be redacted. Locations may not be redacted – not specific enough to lead reasonable person w/o personal knowledge to identity of student with reasonable certainty. |
| Pg. 5, fn. 3 | No FERPA exception applies |
| Pg. 6, ¶ 2, line 1 | Phrase "was friends with" is not excepted under FERPA. |

| Pg. 6, ¶ 2, lines 4-13 | Only student names and dates which would identify class year may be redacted. |
|---|---|
| Pg. 6, ¶ 3 | Only student names, not actions or inaction, may be redacted. |
| Pg. 6, ¶ 4, line 1-3 | Only student name may be redacted. |
| Pg. 6, ¶ 4, lines 4-16 | First four words in line 4 may remain redacted. Starting with first full sentence in line 4, only student name may be redacted. No other FERPA exceptions apply to the actions or contents of the statements. |
| Pg. 6, ¶ 5, title and lines 1-2 | Only student name may be redacted. |
| Pg. 7, ¶ 1 | Only name, student nickname, and references to class years may be redacted. |
| Pg. 7, ¶ 2 | Only names and dates may be redacted. |
| Pg. 7, ¶ 3 | Student and student relative's names, and gift brand names, may be redacted. |
| Pg. 7, ¶ 4 | Only student names and all of line 5 may be redacted. |
| Pg. 8, ¶ 2, line 4 | Redacted location not subject to FERPA exception. |
| Pg. 8, ¶ 4, lines 7-12 | Only student names may be redacted. Dates not subject to FERPA exception in this context. Contents of text conversation not subject to FERPA exception. |
| Pg. 8, ¶ 5 | Only student name and class year may be redacted. |
| Pg. 9, ¶ 1 | Only student name may be redacted. |
| Pg. 9, ¶ 2 | If the message sent was a "private" or "direct" Twitter message, only student name may be redacted. If the message was a public Twitter post, the current redaction is acceptable. |
| Pg. 9, ¶ 3 | Only student and relative's names and class year may be redacted. |
| Pg. 9, ¶ 4 | Only student name, parent name, and class year may be redacted. |
| Pg. 9, ¶ 5, lines 1-12 | Only student name, class year, and all of lines 4 and 13 may be redacted. |

| Pg. 9, ¶ 6, lines 7-10 | Only student name may be redacted. |
| Pg. 10, ¶ 1, lines 1-2 | Only student name may be redacted. |
| Pg. 11, ¶ 4, line 3 | No FERPA exception applies to statement contents. |

**Request No. 2 for "Contract or other documentation outlining the cost and scope of work to be done by Freund, Freeze & Arnold and/or attorney Sandra R. McIntosh"**

{¶19} A requester must reasonably identify the particular records sought. A request that is ambiguous or overly broad may be denied "[i]f a requester makes an ambiguous or overly broad request or has difficulty in making a request for copies or inspection of public records under this section such that the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested." R.C. 149.43(B)(2). It is "the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue." *State ex rel. Zidonis v. Columbus State Community College*, 133 Ohio St.3d 122, 2012-Ohio-4228, 976 N.E.2d 861, ¶ 21. *See State ex rel. Zauderer v. Joseph*, 62 Ohio App.3d 752, 756, 577 N.E.2d 444 (10th Dist.). A request for all records throughout an office, based only on the description of a topic, is inherently problematic. *See Gannett GP Media, Inc. v. Ohio Dept. of Pub. Safety*, Ct. of Cl. No. 2017-00051-PQ, 2017-Ohio-4247, ¶ 10; *Gupta v. Cleveland*, Ct. of Cl. No. 2017-00840PQ, 2018-Ohio-3475.

{¶20} Judicial determination of whether an office has properly denied a request as ambiguous or overly broad is based on the facts and circumstances in each case, *Zidonis* at ¶ 26. I find that the phrase "or other documentation" in Request No. 2 is not sufficiently specific to reasonably identify what records, other than a contract, were sought by this request.

**Embedded Request**

{¶21} A proper request embedded within an otherwise ambiguous or overly broad request may be enforceable. In *State ex rel. Glasgow v. Jones,* 119 Ohio St.3d 391,

2008-Ohio-4788, 894 N.E.2d 686, ¶ 5, 17-24, a request for all a state representative's email for five months was found overly broad, but embedded language – "including, but not limited to [a particular house bill]" – was sufficiently narrow to be a proper request. I find that by excising the phrase "or other documentation," Request No. 2 contains a sufficiently specific request for a "contract * * * outlining cost and scope of work to be done" by the named law firm and/or attorney.

### Non-Existent Records

{¶22} In response to the specific request for a copy of the described contract, Chillicothe CS states that it has no such contract to provide. (Supplemental Response at 2; McIntosh Aff. at ¶ 2.) A public office has no duty to provide records that do not exist, or that it does not possess. *State ex rel. Gooden v. Kagel*, 138 Ohio St.3d 343, 2014-Ohio-869, 6 N.E.3d 471, ¶ 5, 8-9.

### Non-Records

{¶23} Chillicothe CS further asserts that wherever bills for McIntosh's legal services to it might exist, they are not "records" of Chillicothe CS. (Response at 7.) To constitute a public record subject to the Public Records Act a document must be a "record" and must be "kept by" the public office. R.C. 149.43(A)(1); *State ex rel. Sch. Choice Ohio, Inc. v. Cincinnati Pub. Sch. Dist.*, 147 Ohio St.3d 256, 2016-Ohio-5026, 63 N.E.3d 1183, ¶ 13; *State ex rel. Cincinnati Enquirer v. Cincinnati Bd. of Edn.*, 99 Ohio St.3d 6, 2003-Ohio-2260, 788 N.E.2d 629, ¶ 11-15.

"Records" are defined in R.C. 149.011(G) as including:

> any document, device, or item, regardless of physical form or characteristic, * * *, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

The Gazette has the burden to show that a contract for McIntosh's legal services was created by, received by, or came under the jurisdiction of Chillicothe CS, and that it served to document the organization, functions, policies, decisions, procedures,

operations, or other activities of Chillicothe CS. I find that the Gazette has not met this burden. First, there is no affirmative showing that any contract was created by, received by, or came under the jurisdiction of Chillicothe CS. Communication from Liberty Mutual to Chillicothe CS did not include a contract for legal services or copies of invoices for McIntosh's legal fees. (Mullins Aff. at ¶ 2.a., b., d.) Legal services were arranged and paid for by Liberty Mutual. (Supplemental Response at 2; McIntosh Aff. at ¶ 2.) The requested document was therefore not created, received by, or under the jurisdiction of Chillicothe CS. The same evidence establishes that the described contract was not "kept by" Chillicothe CS.

{¶24} Second, the purported contract did not document the organization, functions, policies, decisions, procedures, operations or other activities of Chillicothe CS because Chillicothe CS did not retain McIntosh's services—Liberty Mutual did so after Chillicothe CS made a claim for insurance benefits. (Mullins Aff. at ¶ 2; McIntosh Aff. at ¶ 2.) I find under these circumstances that the described contract for legal services was not a record of Chillicothe CS.

{¶25} I conclude that Request No. 2 was improperly ambiguous and overly broad to the extent it requested "other documentation" regarding legal services. I further find that no Chillicothe CS contract with the named firm or attorney existed, and if a contract for the described services exists elsewhere, it is not a record of Chillicothe CS.

**Request No. 3 for "Meeting minutes showing board approval to hire Freund, Freeze & Arnold and/or attorney Sandra R. McIntosh"**

{¶26} First, this request is a request for information or research, rather than a request for specific existing records. The Public Records Act does not

compel a governmental unit to do research or to identify records containing selected information. That is, relator has not established that a governmental unit has the clear legal duty to seek out and retrieve those records which would contain the information of interest to the requester. *Cf. State ex rel. Cartmell v. Dorrian* (1984), 11 Ohio St.3d 177, 179, 464 N.E.2d 556. Rather, it is the responsibility of the person who wishes to

inspect and/or copy records to identify with reasonable clarity the records at issue.

*State ex rel. Fant v. Tober*, 8th Dist. Cuyahoga No. 63737, 1993 Ohio App. LEXIS 2591, *3-4 (April 28, 1993), *aff'd*, 68 Ohio St.3d 117, 623 N.E.2d 1202 (1993). Accordingly, a request for meeting minutes that contain discussion of a particular topic is an improper request for *information* rather than records. *Salemi v. Cleveland Metroparks*, 8th Dist. Cuyahoga No. 100761, 2014-Ohio-3914, ¶ 26; *State ex rel. O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 190 Ohio App.3d 218, 222, 2010-Ohio-3416, 941 N.E.2d 807, ¶ 7-11. I find that the Gazette's request for "meeting minutes showing board approval to hire Freund, Freeze & Arnold and/or attorney Sandra R. McIntosh" was an improper request to search for records containing information of interest to the requester.

{¶27} Separately, Chillicothe CS has shown that meeting minutes as described in the request do not exist. Chillicothe CS attests there were no meeting minutes discussing McIntosh's legal representation of the district, but that board meeting minutes are available to the public online. (Mullins Aff. at ¶ 2.c.) The Gazette counters that "[i]t seems unlikely that there would be no Board minutes related to Freund" (Reply at 3-4), but offers no affirmative evidence that such minutes exist. Even a reasonable and good faith belief by a requester, based only on inference and speculation, does not constitute the clear and convincing evidence necessary to establish that responsive documents exist. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, ¶ 22-26; *State ex rel. Gooden v. Kagel,* 138 Ohio St.3d 343, 2014-Ohio-869, 6 N.E.3d 471, ¶ 8. I find that the Gazette fails to meet its burden to prove that Chillicothe CS violated R.C. 149.43(B) in not producing "meeting minutes showing board approval to hire Freund, Freeze & Arnold and/or attorney Sandra R. McIntosh."

**Request No. 4 for "All bills from Freund, Freeze & Arnold and/or attorney Sandra R. McIntosh for 2017 and 2018."**

{¶28} Chillicothe CS asserts that the requested bills from Freund, Freeze & Arnold or McIntosh are not records of Chillicothe CS. (Response at 7). Chillicothe CS explains that it was not responsible for, did not receive, and did not pay any legal fees to McIntosh. (Mullins Aff. at ¶ 2.d.) Instead, Liberty Mutual engaged necessary legal services pursuant to an insurance policy that has been provided to the Gazette. (*Id.*; Reply, Exhibit C.)  Based on the same evidence and authority used in the analysis of Request No. 2, above, I find that "bills from Freund, Freeze & Arnold, and/or attorney Sandra R. McIntosh for 2017 and 2018" were not created, received, come under the jurisdiction of Chillicothe CS, or document the activities of Chillicothe CS. I find that the described bills for legal services do not meet the definition of "records" of Chillicothe CS.

### Quasi-Agency

{¶29} The Gazette contends that even if Chillicothe CS does not possess the requested legal bills, it must obtain and produce the bills because the bills are not "outside of its control." (Reply at 3). In certain circumstances, records in the possession of a private entity may be public records subject to the Public Records Act. *State ex rel. Toledo Blade v. Ohio Bur. of Worker's Comp.*, 106 Ohio St.3d, 112, 2005-Ohio-3549, 832 N.E.2d 711, ¶ 20; *State ex rel. Cincinnati Enquirer v. Krings*, 93 Ohio St.3d 654, 657, 758 N.E.2d 1135 (2001). Under the theory of "quasi-agency," a private entity may be a "person responsible" for public records. *State ex rel. Carr v. Akron*, 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948, ¶ 36. When records in the possession of a private entity are thereby subject to the Public Records Act, a request made of the public office should afford the requester access to the records in possession of the private entity. *Krings* at 659; *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990).

{¶30} This court has previously declined to analyze claims under a theory of quasi-agency where the requester does not first establish that the requested documents were "records" under the Public Records Act. *Ebersole v. Powell*, Ct. of Cl. No.

2018-00478PQ, 2018-Ohio-4597, ¶ 19. A quasi-agency analysis is arguably unnecessary in this case as well, because the Gazette fails to show by clear and convincing evidence that the purported legal bills meet the definition of a "record" of Chillicothe CS.

{¶31} However, even if a quasi-agency analysis was necessary, the result would not change. A private entity is a "responsible person" under R.C. 149.43(C) only if all the following conditions are met: (1) the private entity must prepare the records in order to carry out a public office's responsibilities; (2) the public office must be able to monitor the private entity's performance; *and* (3) the public office must have access to the records for the purpose of monitoring performance. *Toledo Blade v. Ohio Bur. of Worker's Comp.,* at ¶ 20. In this case, no prong of the Ohio Supreme Court's three-prong test is satisfied.

{¶32} Neither party addresses the first requirement of quasi-agency – whether Liberty Mutual received legal bills "in order to carry out Chillicothe CS's responsibilities." It appears that Liberty Mutual documented purchase of legal services as an internal record of the delivery of insurance benefits, but providing insurance, even to a public or governmental entity, "has not been established to be a historically governmental function." *State ex rel. Brooks*, 130 Ohio St.3d 87, 2011-Ohio-4897, 955 N.E.2d 987, ¶ 22. The Gazette might argue that legal defense of Chillicothe CS' official actions is the relevant "responsibility carried out" under this analysis, and that had the school district sought legal representation directly, bills from counsel would have been subject to the Public Records Act. *State ex rel. Gannett Satellite Info. Network v. Shirey*, 78 Ohio St.3d 400, 403, 678 N.E.2d 557 (1997). However, unlike *Shirey* the facts in this case do not involve a direct contracting of a task, but the purchase of an insurance policy for which benefits are promised. Chillicothe CS purchased an insurance policy from Liberty Mutual (Reply, Exh. C; Mullins Aff. at ¶ 2.d), and Liberty Mutual appointed McIntosh pursuant to that policy. (Mullins Aff. at ¶ 2, 2.d; McIntosh Aff. at ¶ 2). The premium amount and the terms of the insurance policy are records of Chillicothe CS that

document its decisions and actions in obtaining liability insurance. However, because there is no correspondence between the legal bills paid by Liberty Mutual, and the premium paid by Chillicothe CS, I find that the legal bills were not created "in order to carry out Chillicothe CS' responsibilities."

{¶33} Second, the Gazette has not shown that the terms of the insurance policy gave Chillicothe CS the ability to monitor Liberty Mutual's performance in paying McIntosh's bills. Finally, the Gazette has not shown that Chillicothe CS had access to those bills for the purpose of monitoring Liberty Mutual's performance. Instead, Chillicothe CS had access only to its policy, and its communications with McIntosh in the course of her delivery of legal services. *See State ex rel. ACLU of Ohio v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 52-54. I find that the legal bills for McIntosh's services are not subject to the Public Records Act under the quasi-agency theory.

{¶34} Under the facts and circumstances of this case, the Gazette has failed to establish that the legal bills are public records subject to disclosure.[2]

**Request No. 5 for Copy of insurance policy and "all correspondence with the insurance carrier related to Freund, Freeze & Arnold and/or attorney Sandra R. McIntosh being retained and throughout the retainer."**

{¶35} Chillicothe CS has produced a copy of the insurance policy. (Reply, Exh. C). The Gazette's claim is moot as it relates to this portion of the request.

{¶36} Chillicothe CS asserts that "Requester has not identified the records sought with reasonable clarity." (Response at 5-6). Request No. 5 asks that a search be made through "all correspondence" – a general terms that does not reasonably identify a specific category of office records. *See generally Gupta v. Cleveland*, Ct. of Cl. No. 2017-00840PQ, 2018-Ohio-3475. In the analogous case of *Kanter v. Cleveland Heights*, Ct. of Cl. No. 2018-01092PQ, 2018-Ohio-4592, the requester sought "all

---

[2] Even were the legal bills subject to the Public Records Act, Chillicothe CS has raised the defense of attorney-client privilege. (Response at 7.) *See State ex rel. Pietrangelo v. Avon Lake*, 146 Ohio St. 3d 292, 2016-Ohio-2974, 55 N.E.3d 1091. Due to the finding that the bills are not records of Chillicothe CS, I find it unnecessary to address this defense.

communications, messages, schedules, logs, and documents shared between the City of Cleveland Heights…and employees of the Cleveland Jewish News between March 20, 2013 and April 12, 2013, regarding Garry Kanter." The request was found ambiguous and overly broad. The Gazette's request for "all correspondence" with the insurance carrier "related to" the retainer of McIntosh is ambiguous and overly broad for the same reasons.

{¶37} First, the Gazette's request does not name specific persons whose correspondence is sought. Generally, a request is overly broad when it identifies correspondents only by their relationship to offices, titles, groups or categories, for which research is required to recognize membership. *State ex rel. Oriana House, Inc. v. Montgomery*, 10th Dist. Franklin No. 04AP-492, 04AP-504, 2005-Ohio-3377, ¶ 9, rev'd on other grounds, 107 Ohio St.3d 1694, 2005-N.E.2d 201; *Gannett GP Media, Inc. v. Ohio Dept. of Pub. Safety* at ¶ 11; *Kanter* at ¶ 8. This request would require Chillicothe CS to conduct research to find correspondents based on their membership in organizations—i.e. the Chillicothe School Board and Liberty Mutual.

{¶38} Second, requests for documents "regarding" or relating to a topic are especially problematic:

> A request to find *all* communications "regarding" a topic, to or from any employee, anywhere in the office, requires a needle-in-the-haystack search through the office's paper and electronic communications. It also requires judgment calls as to whether any given communication – whether persona, tenuous, or duplicative – is "regarding" the topic. If a public office attempts such a universal search, the time involved results in delay for the requester. Nor can a public office assume that by agreeing to "do the best it can" with an ambiguous or overly broad request, instead of denying it, will shield it from liability. *See State ex rel. Bott Law Group, LLC v. Ohio Dep't of Natural Res.*, 10th Dist. Franklin No. 12AP-448, 2013-Ohio-5219. The dilemma for the public office may not be whether the public office can identify *any* records responsive to the request, but whether the terms of the request permit it to reasonably identify *all* responsive records.

(Emphasis sic.) *Gannet GP Media, Inc. v. Ohio Dept. of Pub. Safety*, Ct. of Cl. No. 2017-0051PQ, 2017-Ohio-4247, ¶ 10. *See State ex rel. Dillery v. Icsman*, 92 Ohio St.3d

312, 314, 750 N.E.2d 156 (2001) (a request was overly broad where it asked for "any and all records…containing any reference whatsoever to [the requester]"); *State ex rel. Thomas v. Ohio State Univ.*, 71 Ohio St.3d 245, 246, 643 N.E.2d 126 (1994) (request was overly broad where it sought information "regarding or related to" any pro-animal rights action group or individual).

{¶**39**} Third, this request asks for research through office records to find those containing certain information, rather than reasonably identifying specific records. A public office is not required to "seek out and retrieve those records which would contain the information of interest to the requester." *State ex rel. Fant v. Tober*, 8th Dist. Cuyahoga No. 63737, 1993 Ohio App. LEXIS 2591, * 3-4 (April 28, 1993), *aff'd* 68 Ohio St.3d 117, 623 N.E.2d 1202 (1993). *See also State ex rel. O'Shea & Associates Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 190 Ohio App.3d 218, 2010-Ohio-3416, 941 N.E.2d 297, ¶¶ 7-11 *rev'd in part on other grounds*, 131 Ohio St.3d 149, 2012-Ohio-115, 692 N.E.2d 297; *State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 609 N.E.2d 1105, ¶¶ 14-15; *Ebersole v. Powell*, Ct. of Cl. No. 2018-00478PQ, 2018-Ohio-4597, ¶ 28; *Kanter* at ¶ 11.

{¶**40**} Fourth, the Gazette's request for all correspondence relating to Freund, Freeze & Arnold or McIntosh does not identify records in a way that reasonably enables their identification and retrieval. The request is not limited by a specific department, litigation file, physical location, record retention series, email domains, or any other means of narrowing the boundaries for retrieval within the office. *See Kanter* at ¶ 10.

{¶**41**} Finally, the request is not limited to any date range.

{¶**42**} I find that the request for "all correspondence with the insurance carrier related to Freund, Freeze & Arnold and/or Attorney Sandra R. McIntosh being retained and throughout the retainer" is improperly ambiguous, overly broad, and does not reasonably identify the records sought. I find the request is moot as to the requested insurance policy.

**Documents Identified as Responsive to Request No. 5.**

{¶43} A public office's voluntary effort to provide some responsive records, notwithstanding overbreadth of the request, is considered favorably in evaluating its response. *State ex rel. Morgan v. Strickland,* 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 6, 14. In response to the order of September 24, 2018, Chillicothe CS identified and filed under seal two records it deems responsive to Request No. 5. (Supplemental Response at 2). The records are (1) a copy an email dated November 1, 2017 from Jennifer Bergquist, a claims specialist for Liberty Mutual, to Jon Saxton, the superintendent of Chillicothe CS (Exh. 1, filed under seal); and (2) a letter dated October 9, 2018 from Bergquist to Deborah Lewwell, treasurer of Chillicothe CS (Exh. 2, filed under seal.) Chillicothe CS has not claimed that either of these documents is subject to any exception to disclosure. (Supplemental Response at 2-3). I find that Chillicothe CS must provide the Gazette with a copy of the November 1, 2017 email. However, the October 9, 2018 letter does not fall within the reach of Request No. 5, as it did not exist at the time of the May 7, 2018 request. *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2018-Ohio-5333, ¶ 29.

**Request No. 6 for "An engagement letter in which the School District laid out the terms of the engagement. We believe this is dated 10/13/17."**

{¶44} This request is arguably ambiguous in that "engagement letter" is not defined, and is identified only as a document "in which the School District laid out the terms of the engagement" (See analysis above regarding ambiguity and overbreadth of Request No. 5). The request is apparently based on a reference to "questions you had about the date, scope of work, and who initiated it, etc." in a May 23, 2018 email to Ison. Lawwell stated: "Here is what I can tell you. The date of the correspondence was 10/13/2017, she is no longer actively engaged, and she was appointed insurance council [*sic*]." (Am. Compl., Exh. C.)

{¶45} In response to the special master's order to produce the referenced letter of that date, Chillicothe CS submitted Exh. 3 under seal. Exh. 3 is a representation notice from McIntosh to Jon Saxton, and its content is primarily the Statement of

Insured Client's Rights provided in accordance with the Ohio Rules of Professional Conduct. McIntosh identifies herself as counsel retained by Liberty Mutual, gives contact information, and expresses her preferences regarding future communication. The letter does not outline the scope of legal work to be done. I find that the letter is not an "engagement letter" but that sufficient information was exchanged in the correspondence for Chillicothe CS to identify a letter related to appointed defense counsel, dated October 13, 2017.

{¶46} Chillicothe CS argues that the letter is protected from disclosure by common-law attorney-client privilege. (Response at 6-7; Supplemental Response at 3). In Ohio, the attorney-client privilege is defined as follows:

> Under the attorney-client privilege, '(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) unless the protection is waived.

*State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 21. "The attorney-client privilege, which covers records of communications between attorneys and their government clients pertaining to the attorneys' legal advice, is a state law prohibiting release of these records." *State ex rel. Toledo Blade Co. v. Toledo-Lucas County Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 22. The party asserting attorney-client privilege must show the applicability of the privilege. *MA Equip Leasing I, LLC v. Tilton*, 2012-Ohio-4668, 980 N.E.2d 1072, ¶ 21 (10th Dist.).

{¶47} A record is not excepted from disclosure under the Public Records Act merely because it is received from a public office's legal counsel—it must meet all the elements of the privilege. Furthermore, any portion of a communication from an attorney that is nonexempt, such as the general title of the matter being handled, underlying facts of the case, dates of service, financial arrangements, and the like, must be disclosed. *State ex rel. Anderson v. Vermilion*, 134 Ohio St.3d 120, 2012-Ohio-5320,

980 N.E.2d 975, ¶ 15; *Plogger v. Myers*, 2017-Ohio-8229, 100 N.E.3d 104, ¶ 9 (8th Dist.).

{¶48} Chillicothe CS offers only the bare assertion that "[a]ll communications between [Ms. McIntosh] and the Board are protected by the attorney-client privilege" (McIntosh Aff. at ¶ 3, Mullins Aff. at ¶ 2, 2.b.) However, a general assertion of privilege does not meet the burden of proving the elements of attorney-client privilege. Rather,

> The claim of privilege must be made question-by-question and document-by-document.
>
> **Factual showing needed to demonstrate that a communications [sic] is privileged**. Conclusory descriptions of documents in a privilege log are insufficient to meet the producing party's burden of establishing that the document was an attorney-client communication. *In re Search Warrant Executed at Law Offices of Stephen Garea*, 1999 U.S. App. LEXIS 3861, 1999 WL 137499, *1-*2 (6th Cir. March 5, 1999). The party asserting privilege "must make a minimal showing that the communication involved legal matters. This showing is not onerous and may be satisfied by as little as a statement in the privilege log explaining the nature of the legal issue for which advice was sought." *Id.* That showing "must provide the reviewing court with enough information for it to make a determination that the document in question was, in fact, a confidential communication involving legal advice." 1999 U.S. App. LEXIS 3861, [WL] *2.

*Williams v. Duke Energy Corp.*, S.D. Ohio No. 1:08-CV-00046, 2014 U.S. Dist. LEXIS 109835, *14-15 (Aug. 8, 2014). *See Williamson v. Recovery Ltd. P'ship.*, S.D. Ohio No. 2:06-CV-292, 2016 U.S. Dist. LEXIS 125640, *8-10 (Sept. 15, 2016) (proponent made only conclusory statements, rather than an actual showing, that the attorney-client privilege applied to the subpoenaed documents).[3] Neither the pleadings nor the affidavits identify what particular content is confidential, or why. Neither the pleadings nor the affidavits identify the nature of any legal issue upon which legal advice was sought or provided. I find that Chillicothe CS fails to meet its burden to support, or

---

[3] There is no material difference between Ohio's attorney-client privilege and the federal attorney-client privilege. *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 177 (S.D. Ohio 1993), fn.3; *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, S.D. Ohio No. 2:07-CV-116, 2012 U.S. Dist. LEXIS 121830 (August 28, 2012).

specifically assert, that this letter was a communication pertaining to an attorney's legal advice.

{¶49} Review of Exh. 3 *in camera* confirms the absence of privileged content. The October 13, 2017 letter merely identifies the general title of the matter being handled, notifies the school board that Liberty Mutual had retained the author to represent the board in that matter, gives contact information and communication preferences, and copies a boilerplate Statement of Insured Client's Rights. I find that the letter contains only administrative arrangements preceding any legal advice or communication pertaining to a legal issue. *See McCollough v. Johnson, Rodenberg, & Lauinger*, D. Mont No. CV-07-166-BLG-CSO, 2009 U.S. Dist. LEXIS 675, *2 (Jan. 6, 2009); *Stern v. Shelley*, N.D. Ga No. 3:09-CV-00082-JTC-RVG; 4:08-CV-2753-TLW, 2009 U.S. Dist. LEXIS 130148, *30 (Aug. 31, 2009). The bulk of the letter is a verbatim copy of the Statement of Insured Client's Rights from the Ohio Rules of Professional Conduct, Rule 1.8(f) – a public document. I find that the common-law attorney-client privilege does not apply to any portion of the letter.

**Conclusion**

{¶50} Accordingly, I recommend that the court find that the claims in this action are moot as to the records provided to requester prior to the issuance of this report and recommendation. I further recommend the court issue an order GRANTING requester's claims for 1) production of the portions of the Title IX report found not subject to redaction, 2) a copy of the email dated November 1, 2017 from Jennifer Bergquist to Jon Saxton, and 3) a copy of the October 13, 2017 letter from McIntosh. I recommend that costs be assessed equally to the parties.

{¶51} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity*

*all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

JEFFERY W. CLARK
Special Master

**Filed December 26, 2018**
**Sent to S.C. Reporter 1/11/19**