THE STATE EX REL. BELL, APPELLANT, *v.* BROOKS, APPELLEE.

[Cite as *State ex rel. Bell v. Brooks,* 130 Ohio St.3d 87, 2011-Ohio-4897.]

*R.C. 149.43 and 149.431—Writs of mandamus sought to compel a joint self-insurance pool to provide its records pursuant to Ohio Public Records Act—Court of appeals judgment denying writs affirmed in part and reversed in part.*

(No. 2010-1836—Submitted August 8, 2011—Decided September 28, 2011.)

APPEAL from the Court of Appeals for Franklin County, Nos. 09AP-861, 09AP-944, and 09AP-1055, 2010-Ohio-4266.

_____

**Per Curiam.**

{¶ 1} This is an appeal from a judgment denying the requests of appellant, Greg A. Bell, for writs of mandamus to compel appellee, David W. Brooks, the managing director of property and casualty insurance for County Risk Sharing Authority, Inc. ("CORSA"), a joint self-insurance pool whose members include the majority of Ohio's counties, to provide certain CORSA records pursuant to R.C. 149.43 and 149.431. We affirm the judgment of the court of appeals insofar as it denied the writ for the records on grounds that CORSA is not the functional equivalent of a public office for purposes of R.C. 149.43. But we reverse the judgment of the court of appeals to the extent that the court failed to consider Bell's claims in which CORSA's status as a private, nonprofit corporation was not dispositive and remand that portion of the cause to the court of appeals for further proceedings on those claims.

## I. Facts

### A. CORSA

{¶ 2} In the mid-1980s, the General Assembly authorized counties to use risk-sharing pools like CORSA. See R.C. 2744.081. The County Commissioners Association of Ohio, rather than a governmental entity, created CORSA as a private, nonprofit corporation organized under R.C. 1702.01 et seq. In 1987, CORSA began operating as a joint self-insurance pool.

{¶ 3} As of April 2009, CORSA's members included 62 Ohio counties and 19 county facilities. CORSA operates like an insurance company by providing coverage and risk-management services to its members, except that it pools its clients' resources rather than charging premiums. CORSA receives the vast majority of its income from member contributions.

{¶ 4} Neither the state nor any other government entity controls CORSA's day-to-day business operations. Instead, CORSA is operated by an independent board of directors elected by its members. The board is composed of nine members, commissioners from nine different counties. http://www.corsa.org/ BoardofDirectors/tabid/60/Default.aspx. The Internal Revenue Service recognizes that CORSA is a government instrumentality, and thus it is exempt from federal taxation.

### B. Records Requests

{¶ 5} By letter dated September 2, 2009, Bell requested that CORSA provide him with copies of certain records pursuant to R.C. 149.43 and 149.431, including the following financial records:

{¶ 6} "All financial records relating to contract(s) between CORSA and Madison County, Ohio, including but not limited to: all invoices sent to Madison County; all records showing allocation of Madison County payments into CORSA financial accounts and sub-accounts; CORSA's chart of accounts; all records

showing disbursements from CORSA financial accounts as payments to third-parties in performance of the contract(s) with Madison County."

{¶ 7} In his response on behalf of CORSA, Brooks provided some of the requested records, but for the requested financial records other than the Madison County invoices, CORSA refused to provide copies, asserting that they were not public records. Brooks further informed Bell that CORSA was a private corporation and not a public office subject to R.C. 149.43.

{¶ 8} By letter dated September 15, 2009, Bell requested that Brooks provide copies of "[a]ll minutes of every meeting of the CORSA board of trustees, for the period from January 1, 1999 up to and including the most recently convened meeting" pursuant to R.C. 149.43 and 149.431. CORSA denied Bell's request.

{¶ 9} By letter dated September 28, 2009, Bell requested that Brooks provide copies of "[a]ll compensation records for CORSA executive and administrative staff during the period from January 1, 1999 up to and including the records indicating the present compensation amounts" pursuant to R.C. 149.43 and 149.431. CORSA rejected the request.

*C. Mandamus Cases*

{¶ 10} Bell filed complaints in the court of appeals for writs of mandamus to compel Brooks to provide copies of the requested CORSA records in accordance with R.C. 149.43 and 149.431. Brooks submitted answers in the three mandamus cases, and he moved to consolidate the cases for purposes of evidence, briefing, and decision.

{¶ 11} Following a conference before a court of appeals magistrate, on January 20, 2010, the magistrate granted Brooks's motion and consolidated the mandamus cases and ordered the parties to file evidence and briefs on only the issue whether CORSA is a public office for purposes of the Public Records Act. The parties then filed evidence and briefs relating to that specific issue.

**{¶ 12}** The magistrate issued a decision recommending that the court of appeals deny the writs of mandamus because Bell had failed to establish by clear and convincing evidence that CORSA is the functional equivalent of a public office so as to be subject to the Public Records Act. Bell filed objections to the magistrate's decision. In his objections, Bell argued that the magistrate had erroneously narrowed the issue to whether he had established that CORSA was the functional equivalent of a public office, even though his mandamus claims were broader. Bell further claimed that he had established that CORSA was the functional equivalent of a public office. Brooks submitted a response to the objections in which he asserted that Bell's objections should be stricken because the document was signed by Bell on behalf of the attorney in violation of Civ.R. 11 and that Bell had waived his broader mandamus claims because he had agreed that his claims could be resolved on the narrow issue of whether CORSA was the functional equivalent of a public office.

**{¶ 13}** In September 2010, the court of appeals entered a judgment overruling Bell's objections to the magistrate's decision, adopting the decision, and denying the requested writs of mandamus.

**{¶ 14}** This cause is now before the court for our consideration of Bell's appeal as of right from the court of appeals' judgment.[1]

## II. Legal Analysis

*A. Mandamus: Functional Equivalent of a Public Office*

**{¶ 15}** For Bell's public-records mandamus claims, "[m]andamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio*

---

1. This case was initially referred to mediation in November 2010, 127 Ohio St.3d 1439, 2010-Ohio-5806, 937 N.E.2d 569, but was returned to the regular docket in March 2011, 128 Ohio St.3d 1438, 2011-Ohio-1527, 944 N.E.2d 239, and briefing proceeded from that point.

*State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6.

**{¶ 16}** The court of appeals held that Bell's claims lacked merit because CORSA is a private entity. For purposes of the Public Records Act, an office is subject to the act if it is a "state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." R.C. 149.011(A).

**{¶ 17}** In arguing that the court of appeals erred in determining that CORSA was not a public office subject to R.C. 149.43, Bell relies in part on our test in *State ex rel. Fostoria Daily Rev. Co. v. Fostoria Hosp. Assn.* (1988), 40 Ohio St.3d 10, 12, 531 N.E.2d 313 (a hospital is a public office subject to R.C. 149.43 if it is a public hospital, renders a public service to residents, and is supported by public taxation). But in 2006, we modified the test for determining a private entity's status as a public institution under R.C. 149.011(A). *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 47 (before 2006, "we used different tests to determine whether a private entity was a public office subject to the Public Records Act").

**{¶ 18}** In *State ex rel. Oriana House, Inc. v. Montgomery*, 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193, at the syllabus, we set forth the applicable test for determining when a private entity is a public office subject to the Public Records Act:

**{¶ 19}** "1. Private entities are not subject to the Public Records Act absent a showing by clear and convincing evidence that the private entity is the functional equivalent of a public office.

**{¶ 20}** "2. In determining whether a private entity is a public institution under R.C. 149.011(A) and thus a public office for purposes of the Public Records Act, R.C. 149.43, a court shall apply the functional-equivalency test. Under this

test, the court must analyze all pertinent factors, including (1) whether the entity performs a governmental function, (2) the level of government funding, (3) the extent of government involvement or regulation, and (4) whether the entity was created by the government or to avoid the requirements of the Public Records Act."

{¶ 21} We will now apply the functional-equivalency test to CORSA.

### 1. Governmental Function

{¶ 22} Unlike operating community-based correctional facilities, which is the function performed by the private entity at issue in *Oriana House*, 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193, at ¶ 28, providing insurance to counties, which is the function being performed by CORSA, has not been established to be a historically governmental function. As the court of appeals concluded, "[i]nsurance has traditionally been provided by private entities * * *." *State ex rel. Bell v. Brooks*, Franklin App. Nos. 09AP-861, 09AP-944, and 09AP-1055, 2010-Ohio-4266, at ¶ 8. Therefore, CORSA is not performing a historically governmental function.

### 2. Level of Governmental Funding

{¶ 23} From the audit report of CORSA submitted by Bell into evidence, over 88 percent of its income for the fiscal year ending April 30, 2008, consisted of member contributions. And member contributions accounted for an even higher percentage of CORSA's income for the fiscal year ending April 30, 2009, because CORSA had a negative value for its net investment income. This level of government funding is significant. See *Oriana House* at ¶ 32 (entity's receipt of 88 percent of its total revenues from public sources found to be a significant level of government funding); *State ex rel. Repository v. Nova Behavioral Health, Inc.*, 112 Ohio St.3d 338, 2006-Ohio-6713, 859 N.E.2d 936, ¶ 32-33 (entity's receipt of nearly 92 percent of mental-health-services revenue from public sources deemed to be a significant level of government funding).

6

### 3. Extent of Government Involvement or Regulation

**{¶ 24}** There is no evidence that any government entity controls the day-to-day operations of CORSA. The evidence establishes that CORSA is a private corporation operated by an independent board of directors composed of nine individual county commissioners and is not controlled by any county board of commissioners.

### 4. Creation of Entity

**{¶ 25}** Like the entities in *Oriana House* and *Repository*, CORSA was created as a private, nonprofit corporation, was not established by a government entity, and was not formed as an alter ego of a governmental agency to avoid the requirements of the Public Records Act. *Oriana House,* 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193, at ¶ 34; *Repository* at ¶ 37.

### 5. Weighing of Factors

**{¶ 26}** The court of appeals did not err in concluding that Bell had failed to establish by the requisite clear and convincing evidence that CORSA is the functional equivalent of a public office subject to the Public Records Act. Three factors of the functional-equivalency test support Brooks's position that CORSA is not the functional equivalent of a public office, and one factor supports Bell's position that it is.

**{¶ 27}** For the sole factor favoring Bell's claim—the level of government funding—we have emphasized that the "fact that a private entity receives government funds does not convert the entity into a public office for purposes of the Public Records Act." *Oriana House* at ¶ 29; *Repository* at ¶ 38. "The Public Records Act was not designed to allow public scrutiny of 'all entities that receive funds that at one time were controlled by the government.' " *Repository* at ¶ 38, quoting *Oriana House* at ¶ 36.

**{¶ 28}** Nor does the mere fact that R.C. 2744.081(C) specifies that joint self-insurance pools perform a "public purpose" by "enabling the members of the

joint self-insurance pool to obtain insurance or to provide for a formalized, jointly administered self-insurance fund for its members" require a contrary result. See *Oriana House* (holding that nonprofit corporation performing the historically governmental function of operating a correctional facility was not the functional equivalent of a public office so as to be subject to R.C. 149.43); *Repository* (holding that a nonprofit corporation performing the uniquely governmental function of providing mental-health care for the uninsured and compensating for the inadequacy of benefits in commercial health-insurance plans was not the functional equivalent of a public office for purposes of R.C. 149.43).

{¶ 29} Bell's requests for writs of mandamus were for three different categories of CORSA records: (1) financial records relating to contracts between CORSA and Madison County, (2) minutes of CORSA's board meetings, and (3) compensation records for CORSA's executives and administrative staff. Bell concedes that the court of appeals' resolution of the issue whether CORSA is the functional equivalent of a public office resolved his claim for CORSA's board-meeting minutes. Therefore, we affirm the denial of the writ of mandamus for those records.

*B. CORSA's Financial and Compensation Records*

{¶ 30} For the remaining requested records, however, the court of appeals erred in holding that its determination that CORSA is not the functional equivalent of a public office for purposes of R.C. 149.43 also disposed of Bell's mandamus claims for CORSA's financial and compensation records.

{¶ 31} The Revised Code requires the disclosure of certain financial and compensation records of nonprofit corporations and associations with government-service contracts under specified circumstances, even if they are not public offices for purposes of R.C. 149.43:

{¶ 32} "(A) Any governmental entity or agency and *any nonprofit corporation or association*, except a corporation organized pursuant to Chapter

8

1719. of the Revised Code prior to January 1, 1980 or organized pursuant to Chapter 3941. of the Revised Code, *that enters into a contract or other agreement with* the federal government, *a unit of state government, or a political subdivision or taxing unit of this state for the provision of services shall keep accurate and complete financial records of any moneys expended in relation to the performance of the services pursuant to such contract or agreement according to generally accepted accounting principles. Such contract or agreement and such financial records shall be deemed to be public records as defined in division (A)(1) of section 149.43 of the Revised Code and are subject to the requirements of division (B) of that section*, except that:

**{¶ 33}** "(1) Any information directly or indirectly identifying a present or former individual patient or client or his diagnosis, prognosis, or medical treatment, treatment for a mental or emotional disorder, treatment for mental retardation or a developmental disability, treatment for drug abuse or alcoholism, or counseling for personal or social problems is not a public record;

**{¶ 34}** "(2) If disclosure of the contract or agreement or financial records is requested at a time when confidential professional services are being provided to a patient or client whose confidentiality might be violated if disclosure were made at that time, disclosure may be deferred if reasonable times are established when the contract or agreement or financial records will be disclosed.

**{¶ 35}** "(3) Any nonprofit corporation or association that receives both public and private funds in fulfillment of any such contract or other agreement is not required to keep as public records the financial records of any private funds expended in relation to the performance of services pursuant to the contract or agreement.

**{¶ 36}** "(B) *Any nonprofit corporation or association that receives more than fifty per cent of its gross receipts* excluding moneys received pursuant to Title XVIII of the "Social Security Act," 49 Stat. 620 (1935), 42 U.S.C. 301, as

amended, *in a calendar year in fulfillment of a contract or other agreement for services with a governmental entity shall maintain information setting forth the compensation of any individual serving the nonprofit corporation or association in an executive or administrative capacity. Such information shall be deemed to be public records as defined in division (A)(1) of section 149.43 of the Revised Code and is subject to the requirements of division (B) of that section.*

{¶ 37} "Nothing in this section shall be construed to otherwise limit the provisions of section 149.43 of the Revised Code." (Emphasis added.) R.C. 149.431.

{¶ 38} The court of appeals magistrate improperly restricted the submission of evidence and briefs to the functional-equivalency issue and neglected to consider Bell's claims for the release of CORSA's financial and compensation records under R.C. 149.43 and 149.431. Bell timely raised this ground in his objections to the magistrate's decision, but the court of appeals summarily denied Bell's objections without any discussion of R.C. 149.431.

{¶ 39} In this regard, Brooks contends on appeal—and claimed in his response to Bell's objections—that Bell had waived his R.C. 149.431 claims by purportedly agreeing to the magistrate's restriction of the dispositive issue to the functional-equivalency question. But there is no indication that the court of appeals denied Bell's objections on the grounds cited by Brooks. Nor is there evidence in the record to support Brooks's assertion that Bell waived these claims. See *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶ 13 ("Waiver is the intentional relinquishment or abandonment of a known right"). There is no evidence that Bell agreed that the functional-equivalency issue resolved all his claims. And the purported technical violation of Civ.R. 11 raised by Brooks in the proceedings below (Bell's signing the objections on behalf of his attorney) was not done to defeat the purpose of the

rule, but instead was done under exigent circumstances. Nor does Brooks raise this alleged violation of the rule on appeal.

{¶ 40} Therefore, the court of appeals erred in denying Bell's mandamus claims for release of CORSA's financial and compensation records.

### III. Conclusion

{¶ 41} Because the court of appeals did not err in holding that Bell did not establish that CORSA is the functional equivalent of a public office for purposes of R.C. 149.43 and that holding is dispositive of Bell's claim for CORSA's board-meeting minutes, we affirm the portion of the judgment of the court of appeals denying the writ of mandamus relating to those records. But because the court of appeals erred in denying the writs of mandamus regarding Bell's records requests for CORSA's financial and compensation records, we reverse the portion of the judgment of the court of appeals denying the writs relating to those records and remand the cause to the court of appeals for further proceedings, including the submission of evidence and briefs on those remaining claims.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Phillip Wayne Cramer, for appellant.

Isaac, Brant, Ledman & Teetor, L.L.P., Mark Landes, and Mark H. Troutman, for appellee.

_____