[Cite as *State ex rel. Fair Hous. Opportunities of Northwest Ohio v. Ohio Fair Plan*, 2022-Ohio-385.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Fair Housing Opportunities   :
of Northwest Ohio, d/b/a
The Fair Housing Center,   :

          Relator,   :

v.   :

The Ohio Fair Plan,   :

          Respondent.   :

No. 20AP-351

(REGULAR CALENDAR)

D E C I S I O N

Rendered on February 10, 2022

**On brief:** *George Thomas,* for relator.

**On brief:** *Crabbe Brown & James, LLP, Larry H. James,* and *Natalie P. Bryans,* for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Fair Housing Opportunities of Northwest Ohio, d/b/a. The Fair Housing Center ("Fair Housing" or "relator") seeks a writ of mandamus ordering respondent, The Ohio Fair Plan Underwriting Association ("OFP" or "respondent"), to respond to a public records request made pursuant to R.C. 149.43, and provide the records requested.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that OFP is a public office for purposes of Ohio's Public Records Act, codified at R.C. 149.43, and thus, that OFP must respond to the public records request made by Fair Housing by providing

all records not otherwise exempt from disclosure under the statute. Accordingly, the magistrate recommends this court grant relator's request for a writ of mandamus.

{¶ 3} Respondent OFP has filed four objections to the conclusions of law in the magistrate's decision, and relator Fair Housing has filed one counter-objection. OFP's objections are as follows:

> [I.] The Magistrate erred in determining that the OFP is a "public office" as defined in R.C. 149.011.
>
> [II.] The Magistrate's decision is not supported by R.C. 3929.48.
>
> [III.] The Magistrate's decision is inconsistent with the treatment of FAIR plans in other jurisdictions.
>
> [IV.] The Magistrate failed to apply the functional-equivalency test.

{¶ 4} Fair Housing's sole counter-objection is as follows:

> [I.] The Fair Housing Center objects to the Magistrate's decision only in its determination that The Fair Housing Center should not receive attorney fees and statutory damages.

{¶ 5} Because OFP and Fair Housing have filed objections, we must independently review the record and the magistrate's decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). Neither OFP nor Fair Housing has filed objections to the magistrate's findings of fact. Having reviewed the record and the magistrate's decision pertaining to same and finding no error on the part of the magistrate in his determinations of the facts, we hereby adopt the magistrate's findings of fact in their entirety as our own.

{¶ 6} Turning to the magistrate's conclusions of law and both parties' objections to them, we begin by observing that "[m]andamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. For Responsible Medicine v. Bd. of Trustees of Ohio State Univ.*, 108 Ohio St.3d 288, 2006-Ohio-903, ¶ 6. A relator must demonstrate entitlement to the writ by clear and convincing evidence. *State ex rel. Cleveland Right to Life v. State Controlling Bd.*, 138 Ohio St.3d 57, 2013-Ohio-5632, ¶ 2. However, unlike other mandamus cases, "[r]elators in public-records mandamus cases need not establish the lack of an adequate remedy in the ordinary course

of law." *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, ¶ 25, citing *State ex el. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.,* 128 Ohio St.3d 256, 2011-Ohio-625, ¶ 24.

{¶ 7} Ohio's Public Records Act is codified at R.C. 149.43 (the "Public Records Act") and mandates that requestors have full access to public records unless the requested records fall within one of the exceptions specifically enumerated in the act. *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency*, 88 Ohio St.3d 166, 170 (2000). "The Public Records Act reflects the state's policy that 'open government serves the public interest and our democratic system.' " *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, ¶ 13, quoting *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, ¶ 20. Thus, consistent with this policy, courts will construe R.C. 149.43 "liberally in favor of broad access and resolve any doubt in favor of disclosure of public records." *Id.*

{¶ 8} Pursuant to R.C. 149.43(A)(1), a " 'public record' means records kept by any public office." In turn, "record" is defined by R.C. 149.011(G) as "any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." "Public office" is defined by R.C. 149.011(A) as "any state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." Thus, if an entity meets this definition, it must make its records available under the conditions established by R.C. 149.43.

{¶ 9} Public offices must promptly prepare and transmit requested public records within a reasonable period of time. Specifically, R.C. 149.43(B)(1) provides, in pertinent part, "[u]pon request by any person * * * all public records responsive to the request shall be promptly prepared and made available for inspection to the requester at all reasonable times during regular business hours. * * * [A] public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). Notably, the word "promptly"

is not defined in R.C. 149.43 or any other applicable statute. It must, therefore, be given its usual normal or customary meeting. *State ex rel. Wadd v. Cleveland,* 81 Ohio St.3d 50, 53 (1998). Furthermore, whether a public office has provided records within a "reasonable period of time" depends upon all the pertinent facts and circumstances of the case. *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, ¶ 12, citing *State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, ¶ 10. The requester bears the burden of demonstrating that a public office's response to a public records request was unreasonably delayed. *Id.*, citing *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, ¶ 44.

{¶ 10} The Supreme Court of Ohio has held that " ' doubts as to the "public" status of any entity should be resolved in favor of finding it subject to the disclosure statute.' " *State ex rel. Strothers v. Wertheim*, 80 Ohio St.3d 155, 156 (1997), quoting *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.*, 65 Ohio St.3d 258, 261 (1992). The Supreme Court has also held that for purposes of the Public Records Act, a private corporation may be considered a public office when it performs a function of government. " 'An entity need not be operated by the state or a political subdivision thereof to be a public office under R.C. 149.011(A). The mere fact that [the entity] is a private, nonprofit corporation does not preclude it from being a public office.' " *State ex rel. Schiffbauer v. Banaszak*, 142 Ohio St. 3d 535, 2015-Ohio-1854, quoting *State ex rel. Freedom Communications, Inc. v. Elida Community Fire Co.*, 82 Ohio St.3d 578, 579 (1998), citing *State ex rel. Toledo Blade Co.* 260. Furthermore, when a private entity, by the plain language of R.C. 149.011(A), is a "public office" for purposes of the Public Records Act, the functional equivalency test set forth in *State ex rel. Oriana House, Inc. v. Montgomery*, 110 Ohio St.3d 456, 2006-Ohio-4854 is inapplicable. *Id.*

{¶ 11} In this case the magistrate was tasked with determining whether OFP is a "public office" for purposes of the Public Records Act and thus must respond to Fair Housing's public records request. Upon review, we find the magistrate correctly found that OFP is such a public office for purposes of the Public Records Act and therefore must respond to Fair Housing's public records request by providing all records not otherwise exempt from disclosure pursuant to the statute. Furthermore, we find no merit to either

OFP's objections[1] or Fair Housing's objection to the magistrate's decision, as discussed below.

{¶ 12} In its first objection, OFP asserts that the magistrate's conclusion that OFP is a public office as defined by R.C. 149.011(A) is erroneous. We disagree, and instead find the magistrate's conclusion that OFP qualifies as a "public office" as defined by R.C. 149.011(A) is amply supported for three reasons. First, OFP and its board of governors, and its purpose, operation, and regulation thereof, were specifically established by the Ohio legislature through the enactment of R.C. 3929.41 through 3929.49. Such statutory origin evinces a legislative intent that OFP be considered a public office.

{¶ 13} Second, R.C. 3929.47 specifically provides for an administrative process for appeal of any decision made by OFP to the board of governors, whose decision may then be appealed to the superintendent of insurance. This statute provides that "[a]ll final orders and decisions of the superintendent of insurance are subject to judicial review as provided in Chapter 119. of the Revised Code." R.C. 3929.47. As the magistrate points out in his decision, Ohio Adm.Code 3901-1-18(J)(2) further amplifies the foregoing statute, emphasizing the fact that decisions of OFP and its board of governors are orders subject to the administrative appeals process, up to and including judicial review pursuant to R.C. 119. This provides strong support that the Ohio General Assembly considered OFP to be a state agency because OFP is treated as an administrative agency for purposes of R.C. 119 appeals.

{¶ 14} Third, R.C. 3929.48 lends additional support to the magistrate's conclusion that OFP is a public office as defined by R.C. 149.011(A). As the magistrate noted, R.C. 3929.48 grants limited immunity to OFP and its agents and employees, and specifically excludes certain records of OFP from being public documents. Under R.C. 3929.48, "[a]ny reports and communications in connection" with "any inspections undertaken or statements made * * * concerning the property to be insured, or any acts or omissions in connection therewith" are not public documents. Despite OFP's contention that this specific exception from the category of "public documents" indicates OFP is exempt from all public records requests under R.C. 149.43, the magistrate correctly found that "the specific exception for certain categories of documents produced by OFP only reinforces the proposition that all other documents are public records." (Mag. Decision at ¶ 60, citing

---

[1] We observe that OFP's objections are essentially a rehashing of the arguments made in its merit brief.

*Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, ¶ 35[2]; *State ex rel. Newark Group, Inc. v. Admr., Bur. of Workers' Comp.*, 10th Dist. No. 19AP-544, 2021-Ohio-1939.)  In other words, the General Assembly would not purposefully exclude one specific category of records from being considered "public documents" if it did not simultaneously contemplate that all other categories of records *are* "public documents"—i.e., public records.

{¶ 15} OFP makes much of the Supreme Court's decision in *State ex rel. Bell v. Brooks*, 130 Ohio St.3d 87, 2011-Ohio-4897, but *Bell* is readily distinguished from the instant matter.  First, contrary to OFP's position that the *Bell* court held that "providing insurance is not a government function," what the *Bell* court actually found was that "providing insurance *to counties*, which is the function being performed by CORSA, has not been established to be a historically governmental function." (Emphasis added.) *Bell* at ¶ 22.  It is simply inaccurate to argue the Supreme Court made a blanket finding regarding the provision of insurance.  Second, in *Bell*, the private entity from which the records had been requested–CORSA–was established as a private, joint self-insurance pool by the County Commissions Association of Ohio, not pursuant to a statutory scheme as is the case with OFP, which as stated previously was established and is regulated by R.C. 3929.41 through 3929.49 and Ohio Admn.Code 3901-1-18.  The statutory scheme enacted to form OFP itself sets forth in thorough detail its mandated government function.  OFP cannot rely on the general finding of *Bell* that providing insurance to counties is not a historical government function in order to avoid its statutorily established mandate to "assist applicants in urban areas to secure basic property insurance or homeowners' insurance, and to formulate and administer a program for the equitable apportionment of basic property insurance or homeowners' insurance which cannot be obtained in the normal market." R.C. 3929.43.

{¶ 16} OFP also reiterates its argument that because it is specifically exempt from being considered an "agency" for purposes of the "Sunset Review" requirements of R.C. 101.86, it cannot be considered a "public office" for purposes of the Public Records Act. This argument continues to be unavailing.  As the magistrate aptly pointed out, "express

---

[2] *Summerville* states "[a] statute that specifies one exception to a general rule is assumed to exclude all other exceptions* * *." *Id.* at ¶ 34, citing *Thomas v. Freeman*, 79 Ohio St.3d 221, 224-25 (1997).

exemption from sunset review is not the equivalent of exemption from all public body duties. A similar exemption could have been obtained for Public Records Act purposes but was not enacted. Moreover, *the list of other agencies exempt from sunset review consists in large part of agencies that indisputably are subject to public records requests*, such as the Industrial Commission, Employment Relations Board, and Public Utilities Commission, to name but a few." (Emphasis added.) (Mag. Decision at ¶ 61.)

{¶ 17} In summation, the magistrate correctly determined that OFP is a "public office" as defined by R.C. 149.011(A). Accordingly, we overrule OFP's first objection.

{¶ 18} For its second objection, OFP asserts the magistrate's decision is not supported by R.C. 3929.48. This objection has no merit.

{¶ 19} In our discussion relating to OFP's first objection above, we explained why the limited immunity granted to OFP and its agents and the specific exclusion of certain documents of OFP from being public documents provided by R.C. 3929.48 supports the conclusion that all other records of OFP are public records that must be disclosed pursuant to R.C. 149.43. We will not reiterate our discussion here but simply note that it applies just as forcefully to OFP's second objection. Furthermore, as pointed out by Fair Housing, its request made pursuant to the Public Records Act does not seek any of the documents specifically exempted from disclosure by R.C. 3929.48 in any event.

{¶ 20} Accordingly, we overrule OFP's second objection.

{¶ 21} In its third objection, OFP asserts the magistrate's decision is inconsistent with the treatment of FAIR plans in other jurisdictions. This objection is meritless.

{¶ 22} Simply stated, how other states treat their respective FAIR plans with respect to public records requests is simply not relevant. Ohio has its own Public Records Act, its own case law construing same, and its own statutory scheme establishing and regulating the OFP, which is all this court must concern itself with in this matter. OFP has cited to no authority supporting the proposition that we must reconcile other states' treatment of their FAIR plans in regard to public records requests and we decline to take on such a reconciliation.

{¶ 23} Accordingly, we overrule OFP's third objection.

{¶ 24} Finally, in its fourth objection, OFP asserts that the magistrate should have applied the "functional equivalency" test set forth by the Supreme Court in *State ex rel.*

*Oriana House, Inc.,* 2006-Ohio-4854, in order to determine whether OFP was subject to the Public Records Act and further, if that test were properly applied, the correct conclusion is that OFP is not a "functional equivalent" of a public agency so as to be subject to the Public Records Act.  This objection is meritless.

{¶ 25}  We have already determined that the magistrate correctly found that OFP is a public office for purposes of the Public Records Act pursuant to the plain language of R.C. 149.011(A).  As discussed above, when a private entity, by the plain language of R.C. 149.011(A), is a "public office" for purposes of the Public Records Act, the functional equivalency test set forth in *State ex rel. Oriana House, Inc.*, 2006-Ohio-4854, is inapplicable.  *Schiffbauer,* 142 Ohio St.3d at 538.  Therefore, in this case, the functional equivalency analysis is wholly inapplicable.

{¶ 26}  Accordingly, we overrule OFP's fourth objection.

{¶ 27}  We now turn to Fair Housing's counter-objection, in which it asserts that the magistrate erred in not awarding statutory damages and attorney fees.  We disagree.

{¶ 28}  The Public Records Act provides for an award of statutory damages for undue delay in provision of the requested records, even if the records sought were eventually provided.  R.C. 149.43(C)(2); *State ex rel. McCray v. Ohio Dept. of Commerce,* 10th Dist. No. 11AP-1055, 2012-Ohio-2997.  Nevertheless, a court may reduce the award of statutory damages or not award statutory damages if the court determines that, "based on the ordinary application of statutory law and case law as it existed at the time" of the request,  "a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records did not constitute a failure to comply with" its statutory obligation under public records law, and that "a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records would serve the public policy that underlies the authority that is asserted as permitting that conduct or threatened conduct."  R.C. 149.43(C)(2)(a) and (b).

{¶ 29}  In this case, we find the magistrate properly found that no award of statutory damages was warranted based on the "prompt and cooperative nature of OFP's response to the public records request" and because this case involved a matter of first impression, and

thus, the condition of R.C. 149.43(C)(2)(a) had been met. We observe that both of the conditions set forth in R.C. 149.43(C)(2)(a) and (b) must be met in order to decline to award statutory damages and acknowledge the magistrate did not make a specific finding regarding R.C. 149.43(C)(2)(b). Nevertheless, we find that the condition set forth in R.C. 149.43(C)(2)(b) has likewise been met for the same reasons that the condition of R.C. 149.43(C)(2)(a) has been met.

{¶ 30} The Public Records Act also permits an award of reasonable attorney fees in cases where a court renders a judgment that orders a public office to comply with the mandates of the Public Records Act. R.C. 149.43 (C)(3)(b). "An award of attorney fees under this section is discretionary." *State ex rel. Summers v. Fox*, 164 Ohio St.3d 583, 2021-Ohio-2061, ¶ 13, citing *State ex rel. Doe v. Smith*, 123 Ohio St.3d 44, 2009-Ohio-4149, ¶ 23, 30. Furthermore,

> [a] court shall not award attorney fees if the following two conditions are met: (1) based on the law as it existed at the time, a well-informed person responsible for the requested public records would have reasonably believed that the conduct of the public office did not constitute a failure to comply with an obligation of R.C. 149.43(B), and (2) a well-informed person responsible for the requested public records would have reasonably believed that the conduct of the public office would serve the public policy that underlies the authority that it asserted as permitting that conduct.

*Id.* at ¶ 14, citing R.C. 149.43(C)(3)(c); *State ex rel. Rogers v. Dept. of Rehab. & Corr.,* 155 Ohio St.3d 545, 2018-Ohio-5111, ¶ 34. Thus, "[a] prevailing party's attorney-fees request in a public-records mandamus action 'will be denied where the case presents a matter of first impression because courts should not engage in the practice of punishing a party to a lawsuit for taking a rational position on a justiciable, unsettled legal issue.' " *Id.*, quoting *State ex rel. Cincinnati Enquirer v. Daniels*, 108 Ohio St.3d 518, 2006-Ohio-1215, ¶ 35.

{¶ 31} In this case, as noted above in our discussion regarding statutory damages, we agree with the magistrate's finding that this is a case of first impression. Thus, in accordance with *Summers* and R.C. 149.43(C)(3)(c), the magistrate properly found that no award of attorney fees was warranted.

{¶ 32} Accordingly, we overrule Fair Housing's sole objection.

**{¶ 33}** Therefore, for the foregoing reasons, we overrule the objections filed by OFP and we overrule the objection filed by Fair Housing. Having conducted an examination of the magistrate's decision and an independent review of the record pursuant to Civ.R. 53, we find the magistrate properly applied the relevant law to the salient facts in reaching the conclusion that OFP is a public office for purposes of the Public Records Act and therefore must respond to Fair Housing's public records request by providing all records not otherwise exempt from disclosure pursuant to the statute.[3] We modify the magistrate's decision to reflect that on page 18, in the second full paragraph, the phrase "all other documents are public records" should instead be "all other records are public records," and further modify the decision to reflect that both conditions of R.C. 149.43(C)(2)(a) and (b) have been met so as to decline to award statutory damages. As so modified, we otherwise adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, we grant relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus granted.*

MENTEL and NELSON, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

---

[3] We note that this matter does not require us to decide whether all the records requested by Fair Housing are "public records" subject to disclosure and we do not do so here. We have not been asked to and do not rule on any particular objections that may be advanced as to the requests themselves now that the applicability of the public records act has been addressed.

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Fair Housing Opportunities     :
of Northwest Ohio, d/b/a
The Fair Housing Center,                  :

         Relator,                  :

v.                                  :           No.  20AP-351

The Ohio Fair Plan,             :           (REGULAR CALENDAR)

         Respondent.            :

M A G I S T R A T E ' S   D E C I S I O N

Rendered on July 28, 2021

*George Thomas,* for relator.

*Crabbe Brown & James, LLP, Larry H. James,* and *Natalie P. Bryans,* for respondent.

IN MANDAMUS

**{¶ 34}** Relator, Fair Housing Opportunities of Northwest Ohio, doing business as The Fair Housing Center ("Fair Housing") seeks a writ of mandamus ordering respondent, The Ohio fair plan underwriting association ("OFP"), to respond to a public records request made pursuant to R.C. 149.43, and provide the records requested.

Findings of Fact:

**{¶ 35}** 1. Respondent OFP is an association created pursuant to R.C. 3929.43.  Its membership consists of all insurers licensed to transact homeowners' or residential property insurance business in Ohio.

{¶ 36} 2. As defined in R.C. 3929.41, OFP is created to ensure availability, stability, and equitable distribution in the property insurance market in urban areas.

{¶ 37} 3. OFP's employees are not state employees and do not participate in any Ohio public employee retirement system.  (Agreed Statement of Facts, at 2.)

{¶ 38} 4. Under R.C. 3929.43(C), OFP's board of governors submits its proposed plan of operation to the superintendent of the Ohio Department of Insurance.

{¶ 39} 5. Under R.C. 3929.43(D), OFP funds itself through periodic advance assessments against its member insurers.

{¶ 40} 6. Under R.C. 3929.43(G), OFP operates under a 12-member board of directors, 8 of whom are elected by OFP's member insurers and 4 of which are appointed by the governor.

{¶ 41} 7. The regulations governing OFP's operations are promulgated by the superintendent of insurance at Ohio Adm.Code 3901-1-18.

{¶ 42} 8. On April 9, 2020, Fair Housing submitted via certified mail to OFP a request for public records:

> [One] A complete copy of every underwriting standards (sometimes referred to as "underwriting guidelines") that Ohio FAIR Plan has used since 1999.
>
> [Two] A list of every address that has received insurance through Ohio FAIR Plan since 2015. If at all possible, please provide this list in Microsoft Excel, or other similar spreadsheet format, with separate columns indicating:
>
> a. the address of each property,
> b. the type of insurance, and
> c. the amount of the insurance.
>
> [Three] A list of every address that Ohio FAIR Plan rejected for insurance coverage since 2015. If at all possible, please provide this list in Microsoft Excel, or other similar spreadsheet format, with separate columns indicating:
>
> a. the address of each property,
> b. the type of insurance applied for,
> c. the amount of the insurance applied for, and
> d. the reason the application was rejected.

[Four] Any records explaining, detailing, providing guidance on the meaning of, or stating why Ohio FAIR Plan adopted the underwriting criteria of "Dwelling structure must have coverage equal to or greater than Insurance Services Office's rating minimum..."

a. Perform a search of the Ohio FAIR Plan's email servers for the phrase "Dwelling structure must have coverage equal to or greater than Insurance Services Office's rating minimum" and provide any resulting records.

[Five] Any records explaining, detailing, or providing guidance on the meaning of, or stating why Ohio FAIR Plan adopted the underwriting criteria of "Dwelling structure coverage carried must be at least 50% of the replacement cost."

a. Perform a search of the Ohio FAIR Plan's email servers for the phrase "Dwelling structure coverage carried must be at least 50% of the replacement cost" and provide any resulting records.

(Agreed Statement of Facts, Ex. 1.)

{¶ 43} 9. On April 20, 2020, counsel for OFP responded to the public records request with a letter denying that OFP was a public agency subject to public records requests but offering to discuss a response providing certain documentation that did not violate customer privacy. (Agreed Statement of Facts, Ex. 2.)

{¶ 44} 10. Correspondence dated May 18, 2020 from OFP's counsel to Fair Housing elaborated on OFP's reasons for limiting its response to the records request:

This letter is a follow-up to our letter of April 24 and our follow-up telephone conversation.

The board of governors for the Ohio Fair Plan is explicitly excluded from the definition of "agency" set forth in R.C. 101.82 "Sunset Review Committee Definitions."

In 1995, the Ohio Fair Plan inquired as to whether it was a public entity and therefore required to file an annual report as required by R.C. 101.86.

Pursuant to R.C. 101.82, "agency" was defined as "any board, commission, committee, or council, or any other similar public body established under the laws of this state for the exercise of

any function of state government and to which members are appointed or elected."

Our office argued that the board of governors of the Ohio Fair Plan is not a public agency as defined by R.C. 101.82, and therefore not required to file an annual report as required by R.C. 101.86, because R.C. 3929.43 provides that the majority of the Plan's board shall be elected by the private insurance company members of the Plan. Because the majority of the board is made of the private insurance members, the board does not fall within R.C. 101.82's definition as comprising of members appointed or elected by the general public.

The Legislative Service Committee met on December 12, 1995. After considering our office's argument pertaining to the Fair Plan's status as a private association, the Legislative Service Committee unanimously passed a motion exempting the Fair Plan from the reporting requirements for the fiscal year 1995.

Subsequently, in 1997, the Ohio State Legislature amended R.C. 101.82 to explicitly exclude the Ohio Fair Plan from the definition of "agency." Specifically, R.C. 101.82(A)(11) now provide that the definition of "agency" "does not include:...[t]he board of directors of the Ohio insurance guaranty association and the board of governors of the Ohio [F]air [P]lan underwriting association."

As you can see from the above, the Ohio FAIR Plan is not subject to public records request. It is not a public agency for such purposes.

(Emphasis sic.) (Agreed Statement of Facts, Ex. 4.)

{¶ 45} 11. On May 19, 2020, OFP further wrote that, although it maintained its position that it was not obligated to respond, it wished to cooperate to the extent possible with the public records request. OFP offered to provide information to Fair Housing regarding OFP's underwriting guidelines and general statistics, while refusing any information that would compromise privacy for individual borrowers. (Agreed Statement of Facts, Ex. 5.)

{¶ 46} 12. On July 10, 2020, Fair Housing filed its complaint in mandamus with this court, seeking a writ declaring that OFP is a public entity subject to the Ohio Public Records Act, and ordering OFP to provide the requested records to the extent that they did not

constitute protected information under R.C. 149.43. Relator also requests an award of costs, statutory damages, and fees.

Discussion and Conclusions of Law:

{¶ 47} To obtain a writ of mandamus, a relator must show a clear legal right to the relief sought and a clear legal duty on the part of the respondent to provide that relief, in conjunction with the absence of a plain and adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967); *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983). Jurisdiction and venue for this original action in mandamus lie with this court pursuant to the Ohio Constitution, Article IV, Section 3(B)(1)(b), R.C. 2731.02, and R.C. 149.43(C)(1)(b).

{¶ 48} The purpose of the Ohio Public Records Act is to "expose government activity to public scrutiny, which is absolutely essential to the proper working of a democracy." *State ex rel. Gannett Satellite Info. Network, Inc. v. Petro*, 80 Ohio St.3d 261 (1997), citing *State ex rel. WHIO-TV-7 v. Lowe*, 77 Ohio St.3d 350 (1997). Scrutiny of public records allows citizens to evaluate the rationale behind government decisions so that government officials can be held accountable. *White v. Clinton Cty. Bd. of Commrs.*, 76 Ohio St.3d 416, 420 (1996).

{¶ 49} The appropriate remedy to compel compliance with Ohio's Public Records Act is an action in mandamus. R.C. 149.43(C)(1); *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903. R.C. 149.43 should be construed liberally in favor of broad access to public records, and any doubt must be resolved in favor of disclosure. *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374 (1996). R.C. 149.43(C)(1) provides for an award of statutory damages for undue delay in provision of the requested records, even if the records sought were eventually provided. *State ex rel. McCray v. Ohio Dept. of Commerce,* 10th Dist. No. 11AP-1055, 2012-Ohio-2997. The timeliness of an agency's response "depends upon all of the pertinent facts and circumstances." *State ex rel. Morgan v. Strickland,* 121 Ohio St.3d 600, 2009-Ohio-1901, ¶ 10, citing *State ex rel. Consumer News Servs., Inc. v. Worthington Bd. of Edn.,* 97 Ohio St.3d 58, 2002-Ohio-5311, ¶ 37-38. Public offices must promptly prepare and transmit public records within a reasonable period of time. R.C.

149.43(B)(1).  The word "promptly" is not defined in R.C. 149.43 or any other applicable statute.  It must, therefore, be given its usual normal or customary meeting.  *State ex rel. Wadd v. Cleveland,* 81 Ohio St.3d 50, 53 (1998).

{¶ 50} The requestor of public records must identify the records sought "with reasonable clarity," so that the public office can identify responsive records based on the manner in which it ordinarily maintains and accesses its records.  *State ex rel. Zidonis v. Columbus State Community College,* 133 Ohio St.3d 122, 2012-Ohio-4228, ¶ 26, 33.  *See also State ex rel. Glasgow v. Jones,* 119 Ohio St.3d 391, 2008-Ohio-4788, ¶ 17.  Otherwise put, the Public Records Act does not require the public office to speculate regarding the selection of public records of specific interest to the requestor.  *State ex rel. Thomas v. Ohio State Univ.,* 71 Ohio St.3d 245 (1994).

{¶ 51} The sole dispute in this matter, although subsidiary disputes may arise regarding the availability of certain specific records, is whether OFP is a "public office" as defined in Ohio's Public Records Act.  R.C. 149.011 defines "public office" as "any state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government."  If an entity meets this definition, it must make its records available under the conditions established in other aspects of R.C. 149.43:  "public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours."  R.C. 149.43(B).

{¶ 52} Fair Housing argues that OFP easily meets the standard.  In the alternative, Fair Housing argues that OFP is a "quasi-agency" that is subject to public records requirements under *State ex rel. Carr v. Akron,* 112 Ohio St.3d 351, 2006-Ohio-6714, ¶ 37, a case finding that a testing contractor conducting firefighter promotional examinations was subject to public records law.  Fair Housing provides the additional, and essentially overlapping, argument that OFP is the functional equivalent of an agency under *State ex rel. Oriana House, Inc. v. Montgomery,* 110 Ohio St.3d 456, 2006-Ohio-4854.

{¶ 53} Because the magistrate concludes that OFP is a public office as defined in R.C. 149.011, the magistrate does not reach the quasi-agency or functional equivalency theories in this matter.

{¶ 54}  It is undisputed that OFP is a creature of statute.  The legislature enacted R.C. 3929.41 through 49 to create OFP and its governing board.  R.C. 3929.43 mandates the composition of OFP, and issuers of insurance must operate as members of the OFP in order to operate and sell insurance in Ohio.  R.C. 3929.43(C) then mandates that OFP will operate under the supervision and control of the Ohio Superintendent of Insurance.  The superintendent defines "urban areas," the target area for OFP's intended policy justification, pursuant to R.C. 3929.42(E).  This section also calls on the superintendent to approve the resulting rates for property insurance.  Ultimately, if OFP does not submit an acceptable plan of operation, the superintendent may impose one.  R.C. 3929.43(C).

{¶ 55}  Pursuant to the above statute, the Department of Insurance has promulgated regulations providing an administrative process for appeal of the decisions of OFP in the issuance of insurance.  Ohio Adm.Code 3901-1-18(J)(2) states:

> Any applicant, insured, or member insurer shall have the right to appeal to the superintendent any action or decision of the board. * * * The decision of the superintendent of an appeal is a final order and is subject to judicial review as provided in Chapter 119. of the Revised Code.

{¶ 56}  OFP then funds itself under R.C. 3929.43(D)(1) and 3929.43(C) through assessments upon its member insurers.  Finally, OFP's plan of operation, as approved by the superintendent, is published in the Administrative Code at Ohio Adm.Code 3901-1-18.

{¶ 57}  OFP correctly points out that not all heavily regulated private enterprises will be brought into the ambit of Ohio's Public Records Act as public offices.  Defining a public office must necessarily be a case-by-case proposition.  One important factor is the nature of the public service provided by a statutorily created office with a significant private-sector component.  In *State ex rel. Beacon Journal Publishing Co. v. Bodiker,* 134 Ohio App.3d 415 (1999), this court stated as follows:

> The Ohio Public Defender is established by R.C. 120.04 for the purpose of furthering various government objectives relating to the representation of indigent persons. In that regard, the Ohio Public Defender's Office is a "public office" as defined in R.C. 149.11(A).

*Id.* at 422.

{¶ 58} Similarly, OFP was established for the purpose of furthering the government objective of providing insurance availability in areas where difficulties had arisen when private insurers were left free to underserve a market. The legislature then created a heavily regulated and overseen entity, mandated to create a plan satisfactory to the superintendent of the Department of Insurance, to implement this public policy goal. On balance, the magistrate concludes that in its genesis and implementation OFP is a public office as defined by statute and must comply with Ohio's Public Records Act.

{¶ 59} Beyond its general statutory structure, OFP relies on a pair of specific statutory sections for the proposition that it is exempt from public records requests. OFP notes that R.C. 3929.48 grants limited immunity to OFP and any of its directors, agents, or employees, and specifically provides that certain OFP records are not public documents:

> There shall be no liability on the part of, and no cause of action of any nature shall arise against any insurer, inspection bureau, or the Ohio fair plan underwriting association, or a director, agent, or employee of any of these, or the superintendent of insurance or his authorized representatives, for any inspections undertaken or statements made by any of them concerning the property to be insured, or any acts or omissions in connection therewith. Any reports and communications in connection therewith are not public documents.

{¶ 60} The magistrate concludes that the specific exception for certain categories of documents produced by OFP only reinforces the proposition that all other documents are public records under the rule of *inclusio unius est exclusio alterius*. *Summerville v. Forest Park,* 128 Ohio St.3d 221, 2010-Ohio-6280, ¶ 35; *State ex rel. Newark Group, Inc. v. Administrator, Bur. of Workers' Comp.,* 10th Dist. No. 19AP-544, 2021-Ohio-1939.

{¶ 61} OFP also argues that exclusion of OFP, under R.C. 101.86, from a roster of state agencies required to submit annual reports to the Sunset Review Committee ("sunset review"), tasked with holding hearings and receiving testimony from state agencies to evaluate usefulness, performance, and effectiveness, mandates a conclusion that OFP is not an agency. In 1995, OFP obtained an opinion from the Ohio Legislative Service Commission ("LSC") that OFP was not an agency required to file an annual report for sunset review. LSC subsequently drafted legislation adopted by the legislature in 1997 amending R.C. 101.82 to expressly exclude OFP from the definition of agency for this purpose. R.C. 101.82(A)(11) now provides that "the board of governors of the Ohio fair plan underwriting

association" is not a "state public body required to be established pursuant to state statutes for the exercise of any function of state government."  Again, express exemption from sunset review is not the equivalent of exemption from all public body duties.  A similar exemption could have been obtained for Public Records Act purposes but was not enacted.  Moreover, the list of other agencies exempt from sunset review consists in large part of agencies that indisputably are subject to public records requests, such as the Industrial Commission, Employment Relations Board, and Public Utilities Commission, to name but a few.

{¶ 62}  The magistrate accordingly concludes that OFP is a public office for purposes of Ohio's Public Records Act and must respond to Fair Housing's public records request with all records not otherwise exempt from disclosure under statute.  It is therefore the decision and recommendation of the magistrate that a writ issue directing OFP to that effect.

{¶ 63}  Fair Housing has moved for an award of costs, statutory damages, and fees in this matter.

{¶ 64}  An award of costs is mandated under R.C.149.43(C)(3)(a)(i).

{¶ 65}  With respect to statutory damages and attorneys' fees, the magistrate notes the prompt and cooperative nature of OFP's response to the public records request; while OFP has denied that it is subject to the Public Records Act, it has worked with the requestor to provide information.  Moreover, because determinations of whether an entity is a public office under the Public Records Act are often clouded and precedent can be sparse, the magistrate concludes that there is no bad-faith element in OFP's response.  "The Public Records Act 'outlines four triggering events that grant a court discretion to order reasonable attorney fees in a public-records case.' "  *State ex rel. Summers v. Fox,* ____ Ohio St. ____, 2021-Ohio-2061, ¶ 12, quoting *State ex rel. Rogers v. Dept. of Rehab & Corr.,* 155 Ohio St.3d 545, 2018-Ohio-5111, ¶ 32.  If a court renders judgment ordering a public office to comply with the act, a court may award attorney fees to the relator.  R.C. 149.43(C)(3)(b).  Such an award, however, is  discretionary.  *State ex rel. Doe v. Smith,* 123 Ohio St.3d 44, 2009-Ohio-4149, ¶ 23.  Furthermore, a court may not award attorney fees if two conditions are met:

> (1) based on the law as it existed at the time, a well-informed
> person responsible for the requested public records would have

> reasonably believed that the conduct of the public office did not constitute a failure to comply with an obligation of R.C. 149.43(B), and (2) a well-informed person responsible for the requested public records would have reasonably believed that the conduct of the public office would serve the public policy that underlies the authority that it asserted as permitting that conduct.

*Summers* at ¶ 14, citing R.C. 149.43(C)(3)(c) and *Rogers* at ¶ 34.

{¶ 66} "A prevailing party's attorney-fees request in a public-records mandamus action will be denied where the case presents a matter of first impression because courts should not engage in the practice of punishing a party to a lawsuit for taking a rational position on a justiciable, unsettled legal issue." *State ex rel. Cincinnati Enquirer v. Daniels,* 108 Ohio St.3d 518, 2006-Ohio-1215, ¶ 35.

{¶ 67} The magistrate applies *Summers* and *Daniels* in this case to find that the position taken by OFP in this matter fulfills both prongs of the test to preclude an award of fees. Similarly, an award of statutory damages pursuant to R.C. 149.43(C)(2) may be reduced if the public office could reasonably believe that its response did not constitute a failure to comply with its statutory obligation under public records law. R.C. 149.43(C)(2)(a). The magistrate finds that to be the case and declines to award statutory damages.

{¶ 68} It is therefore the further decision and recommendation of the magistrate that costs shall be awarded to relator but that no fee or statutory damages award will issue in this case despite the issuance of a writ.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

> Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).